UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-21345-CIV-TORRES

Consent Case

WEATHERTROL MAINTENANCE CORP.,
a Florida Corporation,

    Plaintiff,

vs.

NOVA CASUALTY COMPANY, a
foreign corporation, and SPADES
CONSTRUCTORS, INC., a Florida
Corporation,

    Defendant.
_____/

### ORDER ON PENDING MOTIONS FOR SUMMARY JUDGMENT
### AS TO ENTITLEMENT OF ATTORNEY'S FEES AND COSTS

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment as to Entitlement of Attorney's Fees (D.E. 36), Plaintiff's Motion for Summary Judgment as to Issue of Entitlement to Attorney's Fees and Costs (D.E. 37), Defendants' Response to Plaintiff's Motion for Summary Judgment as to Entitlement of Attorney's Fees (D.E. 42), and Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment as to Issue of Entitlement to Attorney's Fees and Costs (D.E. 45). Upon consideration of the motions, related filings, and the record, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to Issue Entitlement of Attorney's Fees and Costs, and **GRANTS** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Weathertrol Maintenance Corporation ("Weathertrol") filed this action under 40 U.S.C. § 3131, "the Miller Act," against Defendants Nova Casualty Company ("Nova") and Spades Construction ("Spades") for alleged breach of contract and unjust enrichment against Spades, together with an action against a surety bond. The suit arose out of non-payment of a portion of a subcontractor agreement requiring Plaintiff to provide and install equipment for a construction project at the VA Hospital in Miami, Florida. See Compl. ¶¶ 10-11.

Following discovery proceedings but prior to trial, the parties settled the case and stipulated to the dismissal of the case with the exception of the issue of entitlement to attorney's fees. The parties' Stipulation for Dismissal (D.E. 43) was filed June 27, 2006 and the Court approved that stipulation and dismissed the case with prejudice on June 29, 2006 (D.E. 44), subject to the resolution of the attorney's fees dispute.[1]

Plaintiff subsequently moved for summary judgment as to entitlement of attorney's fees (D.E. No. 37) and Defendants moved for summary judgment to deny Plaintiff's entitlement of attorney's fees (D.E. No. 36). After the briefing of the cross-motions was complete, the matter became ripe for disposition. Neither party requested a hearing on the cross-motions.

## II. STANDARD OF REVIEW

A party seeking summary judgment must ordinarily demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[1] This case was originally assigned to the Hon. Joan A. Lenard, but then referred for trial and final judgment to the Hon. Theodore Klein, U.S. Magistrate Judge, pursuant to the parties' consent. (D.E. 22). Following Judge Klein's illness, the case was transferred to the undersigned Magistrate Judge by Administrative Order, following which the parties consented to such transfer. (D.E. 47, 49).

as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir.1999). The movant bears the initial responsibility of informing the Court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

In response to a properly supported motion for summary judgment, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts which show a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2552. The Court, however, must view the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. Maniccia, 171 F.3d at 1367. It is important to note that, a party "seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553 (internal quotations omitted).

That being said, technically these well-recognized shifting burdens are not directly applicable to the issue at hand. The parties chose to raise the issue of entitlement to attorney's fees under the Miller Act utilizing the summary judgment procedure, signifying of course that the parties concede that the entitlement issue is one for the Court to rule upon as a matter of law. Summary judgment for one party or the other would then be appropriate. The Court's consideration of these motions, however, is no different than if

the parties had simply raised motions for entry of judgment for attorney's fees or even motions for sanctions under the Court's inherent power. That is the case because under the Miller Act, before attorney's fees can be awarded, the Court must find that the losing party acted in bad faith, vexatiously or wantonly. That is no different than a motion for sanctions for which the District Court has substantial discretion. E.g., Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991). Thus, even though the present entitlement issue will be disposed of by way of summary judgment (in response to the parties' motions), the Court's Order herein will be based on the exercise of that discretion, upon which review will be limited to an abuse of discretion, and not necessarily to a mechanical application of Rule 56. See Tacon Mech. Contractors, Inc. v. Aetna Cas. & Surety. Co., 65 F.3d 486, 489 (5th Cir. 1995) ("While the rationale for the district court's denial of attorneys' fees is contained in its opinion on summary judgment, it is clear to this Court that we review its decision not to exercise its inherent power to sanction under an abuse-of-discretion standard.").

Additionally, the Court's review of the pending motions will be limited to the paper record. Neither party requested an evidentiary hearing, thus waiving the right to obtain such a hearing for the entitlement issue. Moreover, the Court's review of the record shows that the issues raised are fully capable of being resolved without such a hearing.

### III.   ANALYSIS

There is no question that the Miller Act itself does not provide for attorney's fees. Only federal common law regarding attorney's fees applies to Miller Act claims. United States ex rel. Garrett v. Midwest Construction Co., 619 F.2d 349, 352 (5th Cir.1980). These federal principles usually apply the "American Rule" that ordinarily bars the shifting of attorney's fees in the absence of a statute or a contract as "each party should

bear the costs of its own legal representation." F. D. Rich Co., Inc. v. U. S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 129, 94 S. Ct. 2157, 2165 (1974). This doctrine, originally adopted by the Supreme Court in Arcambel v. Wiseman, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613(1796), has been consistently reaffirmed. See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616-17 (1975); Chambers, 501 U.S. at 52-56. The rationale for the rule, which often deprives an injured party of full compensation, is that because "litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S. Ct. 1404, 1407 (1967).

The American Rule is not, however, absolute; attorney's fees may be awarded to a successful party when "his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." F.D. Rich, 417 U.S. at 129 (recognizing this bad faith exception within the context of a Miller Act action). The bad faith exception derives from the inherent power of the federal courts to sanction conduct that abuses the judicial process. Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758 (10th Cir. 1997). "Fees awarded under the bad-faith exception are punitive in nature, but are designed to punish the abuse of judicial process rather than the original wrong [underlying the action]." Shimman v. International Union of Operating Eng'rs, 744 F.2d 1226, 1232 n.9 (6th Cir. 1984) (en banc); see also Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1502-03 (5th Cir. 1995) (en banc).

As a result, most circuits have held that the bad faith exception does not extend to purely prelitigation bad faith conduct. Towerridge, 111 F.3d at 766-67 (collecting cases). Significantly, the Eleventh Circuit has squarely taken that position and held that

the bad faith or vexatious conduct that can overcome the American Rule must have occurred or been "part of the litigation process itself." Woods v. Barnett Bank of Ft. Laud., 765 F.2d 1004, 1014 (11th Cir. 1985) (following binding precedent from Fifth Circuit, Barton v. Drummond Co., 636 F.2d 978, 985 (5th Cir. 1981)). Thus, as in Woods, if a court finds that the bad faith or vexatious conduct cited as support for an award of fees was inherent in the acts or conduct at issue in the litigation, then an award of fees is improper under the American Rule. See also Chambers, 501 U.S. at 53, 54 n.16 ("the imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves *during the litigation*") (emphasis added).[2]

In this case, Plaintiff's complaint alleged that Defendants owed $170,957.00 under the Agreement between the parties. See Compl. ¶15(a). Defendants claimed that $88,247.00 was spent in the completion of Plaintiff's contracted for work but apparently made no similar allegations concerning the remaining $82,710.00 owed under the Agreement. See Spade's Answers to Weathertrol's Interrogatories at ¶¶8-10,13; Nova's Answers to Interrogatories at ¶9. As a result, according to Plaintiff, this latter sum represents "monies rightfully due to Plaintiff [that were withheld] without any reasonable

---

[2]   A Southern District of Florida decision from 1995 arguably supports a different proposition, as Judge Roettger found that bad faith could be found "on the conduct giving rise to the legal controversy when a party confronted with a clear legal duty is so recalcitrant in performing that duty that the injured party is forced to resort to litigation to vindicate his rights." U.S. v. Bachner, 877 F. Supp. 625, 627-28 (S.D. Fla. 1995). The court did not cite the Eleventh Circuit's narrower statement of the rule in Woods and instead relied upon dicta from a Ninth Circuit case, Lear Siegler, Inc., Energy Products Div. v. Lehman, 842 F.2d 1102 (9th Cir. 1988). That panel decision, however, was later vacated by the Ninth Circuit. 893 F.2d 205 (9th Cir. 1989). Moreover, the Ninth Circuit later clarified that an award of fees under the American Rule could not be solely based upon prelitigation bad faith conduct. See Association of Flight Attendants v. Horizon Air Indus., Inc., 976 F.2d 541, 548-49 & nn. 10, 11 (9th Cir. 1992). Thus, Judge Roettger's statement of the applicable law is no longer persuasive.

explanation," and the non-payment of these "undisputed" monies forms the basis of Defendants' bad faith actions.  See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment as to Issue of Entitlement to Attorney's Fees and Costs.

In response, Defendants do not dispute that they did not expressly challenge the remaining $82,710.00, but instead point out that the costs for completion of the project Plaintiff was contracted to perform were not final.  See Spade's Answers to Weathertrol's Interrogatories at ¶¶13; Nova's Answers to Interrogatories at ¶9.  Consequently, Defendants argue that the $82,710.00 that Plaintiff relies upon cannot be termed "undisputed," and, regardless, Plaintiffs have failed to show "bad faith" on the part of Defendants.

While Plaintiff commenced litigation in order to recover the outstanding payments under its subcontractor's Agreement, for purposes of this motion Plaintiff does not dispute that Defendant always maintained that Plaintiff failed to fulfill all its duties under the Agreement, which forced Defendants to employ replacement subcontractors in order to complete the project.  There is also a basis in the record to say that the completion costs of the project had not been fully realized at the time of litigation, and thus the sum of money representing the difference between the monies owed to Plaintiff under the Agreement and the monies expended by Defendants in completion of the project could not be deemed "undisputed."  Plaintiff's pending motion has not convincingly shown that the entire $82,710.00 alleged is undisputably owed by Defendants.

What this discussion does show, instead, is that Plaintiff is relying entirely on the Defendant's prelitigation conduct in allegedly breaching its contractual duties.  Plaintiff is not pointing to any particular oppressive conduct or vexatious litigation tactics that occurred after the lawsuit was filed.  Thus, as the cases cited above hold, a court cannot award attorney's fees under the bad faith exception to the American Rule where a party

is relying solely on prelitigation conduct underlying the alleged wrong at issue in the litigation. In other words, the American Rule cannot be set aside merely because a case involves a "bad faith" breach of contract or a "bad faith" securities fraud. The Eleventh Circuit rejected that approach in Woods and we are bound to reject it here.

Moreover, the essence of bad faith requires the type of conduct that would require punishment for a litigant's abuse of the judicial process. The Court's review of the record shows that this case involves a reasonable dispute over the amounts due under a contract. Plaintiff has not pointed to any specific litigation tactics or strategies as evidence of bad faith conduct. And what Plaintiff has pointed to does not rise to the level of sanctionable conduct that warrants punishment in the form of attorney's fees against the Defendant. The Plaintiff's argument sounds more like a plea for fairness: general contractors should not force subcontractors to resort to litigation to get paid. Plaintiff raises a fair point. But that plea for adequate and timely compensation is one that the Congress can and, maybe, should resolve by amending the Miller Act to allow a prevailing party to obtain a fee award with a lesser showing than required today. Until that occurs, however, a court cannot unilaterally amend the statute by expansively broadening the scope of the American Rule through findings of bad faith for purely prelitigation conduct that are at the heart of the underlying contractual dispute. For Plaintiff to succeed here, that is what this Court would have to do. It, unfortunately for Plaintiff, cannot do that. See, e.g., Tacon, 65 F.3d at 489 (affirming district court's denial of attorney's fees under Miller Act even though undisputed sums were owed; while surety should have paid the claims more quickly, the failure to do so did not warrant an award of attorney's fees).

In sum, Plaintiff failed to demonstrate that "bad faith" can be found here as that term is understood in this context. Even if blatant or unreasonable, the mere allegation of non-payment of a contractual obligation does not rise to the level of "bad faith" as

required by F.D. Rich when the outstanding monies are not clearly undisputed and there is no indication of Defendants' ill intent in the litigation process itself. See, e.g., Towerridge, 111 F.3d at 768-69 (reversing award of attorney's fees in Miller Act case in favor of plaintiff subcontractor; alleged bad faith conduct was entirely related to prelitigation events that were the basis of the contract claim, such as refusal to pay amounts clearly due and owing; "Even assuming all such actions occurred and were in bad faith, the bad faith was not abusive of the judicial process; any bad faith lay solely in T.A.O.'s prelitigation acts which gave rise to Towerridge's substantive claim. Thus, the bad-faith conduct was not of either of the types which are within the scope of the bad-faith exception.").

And moreover, even if the Court adopted a broader bad faith standard here as some earlier cases suggest, Defendants did not undisputedly owe Plaintiff the monies in question; Plaintiff was not deprived of "a benefit to which [Plaintiff] is plainly entitled." Republic of Cape Verde v. A&A Partners, 89 F.R.D. 14, 21 (S.D.N.Y. 1980).[3] Compare F&G Mech. Corp. v. Manshul Constr. Corp., 1998 WL 849327 (E.D.N.Y. Oct. 1, 1998) (denying motion for attorney's fees in Miller Act case because factual issues raised in defendant's setoff and counterclaims were sufficiently tangible and not disingenuous to warrant award of fees).

---

[3] In Republic of Cape Verde, the court awarded attorney's fees to Plaintiff due to Defendant's "bad faith." That case involved a clearly undisputed sum of money initially paid by a plaintiff as a deposit; the agreement between the parties specifically provided that the deposit would be returned under the circumstances that occurred in the case (contract cancellation). Id. These undisputed and glaring facts were pivotal in the court's awarding of attorney's fees to plaintiff. By contrast, the monies forming the basis of Plaintiff's "bad faith" claim in this case are not so undisputed. Uncertainty regarding completion costs arguably precludes Plaintiff's assertion that Defendants' withholding of the $82,710.00 constitutes bad faith, thereby entitling an award of attorney's fees. Having said that, again, Republic of Cape Verde may have applied a broader bad faith standard than current circuit caselaw would support, especially in the Eleventh Circuit.

### *IV.   CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion for Summary Judgment as to Issue of Entitlement to Attorney's Fees and Costs (D.E. No. 37) is **DENIED**.

2. Defendant's Motion for Summary Judgment as to Entitlement of Attorney's Fees (D.E. 36) is **GRANTED**. The Court finds, in the exercise of its discretion, that attorney's fees should not be awarded against Defendant in this case.

3. This Order is intended to be a Final Order with respect to all issues that remained outstanding following the dismissal of this case. This case is and shall remain CLOSED.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of February, 2007.

                                                                                       _____
                                                                                       EDWIN G. TORRES
                                                                                       United States Magistrate Judge

Copies provided to:
All Counsel of Record